**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 93-1232

---

Missouri Pacific Railroad Company,
d/b/a Union Pacific Railroad Co.,

Plaintiff-Appellant
Cross Appellee,

VERSUS

Harbison-Fischer Manufacturing Co.,

Defendant-Third Party
Plaintiff-Appellee
Cross Appellant,

CUSTOM WIRE MFG., INC.,

Third Party Defendant
Cross-Appellee.

---

Appeals from the United States District Court
for the Northern District of Texas

---

(July 6, 1994)

Before GOLDBERG, DAVIS, and DEMOSS, Circuit Judges.

DEMOSS, Circuit Judge:

The district court below rendered several summary judgments in this multi-party case arising out of two consecutive leases of railroad property. We affirm two of the court's rulings, reverse one of them, and affirm the court's denial of a request for attorney's fees.

I.

In 1956, the Texas & Pacific Railway Company (TPRC) leased real property located in Forth Worth, Texas, to Harbison-Fischer Manufacturing. Upon entering the land, Harbison-Fischer built several buildings on the leased property. The lease provided that Harbison-Fischer would remove its plant and equipment within 30 days of the termination of the lease and that, if Harbison-Fischer failed to do so, TPRC could acquire title to the plant and equipment by notifying Harbison-Fischer within 30 days. The lease did not specify what would be the state of title in the event the lessor failed to give the notice to acquire title. The Missouri Pacific Railroad Company (MOPAC) later acquired TPRC, making MOPAC the lessor under the lease agreement.

On December 12, 1983, Harbison-Fischer notified MOPAC that Harbison-Fischer was terminating the lease effective January 14, 1984. On December 29, 1983, MOPAC acknowledged Harbison-Fischer's termination notice and requested that Harbison-Fischer remove its property by January 14, 1984. Harbison-Fischer, however, never removed its plant. MOPAC, meanwhile, never notified Harbison-Fischer that it elected to acquire title to the abandoned plant and equipment. At some point the following year, a machine tools company entered the abandoned property without a lease and began operations. MOPAC learned of the operations and in January 1985 sent a letter to Bill Mims, the company's head, instructing him to vacate the premises.

MOPAC then leased the plant and equipment to Custom Wire Manufacturing in July 1987 for a term of one year, with automatic renewal on an annual basis. The comprehensive, ten-page lease

provided, <u>inter alia</u>, that Custom Wire would comply with federal environmental laws and be responsible for any costs associated with the release of oil and hazardous substances. The lease also permitted MOPAC to re-enter and re-possess the property in the event Custom Wire defaulted. Finally, the lease authorized MOPAC to take title to the plant and equipment and sell it if Custom Wire failed to remove it upon termination of the lease. The lease neither referred to the MOPAC/Harbison-Fischer lease nor conditioned any of the parties' rights and obligations upon Harbison-Fischer's approval.

The plant eventually was destroyed by fire in 1987[1], which either created or aggravated an environmental hazard. In November 1989, MOPAC sued Harbison-Fischer in Texas state court for various tort claims and for breach of contract due to Harbison-Fischer's failure to remove the plant. Two days later, Harbison-Fischer sued MOPAC and Custom Wire in a different state court for a declaratory judgment on both its lease with MOPAC and MOPAC's lease with Custom Wire. Harbison-Fischer also sued MOPAC and Custom Wire for attorneys' fees. The two suits were consolidated in state court in February 1990.

---

[1]The record does not indicate whether the fire occurred before or after Custom Wire signed the lease with MOPAC. Custom Wire presumably would not enter a lease for property that had been destroyed by fire. In fact, the parties obviously recognized the possibility of a fire because the MOPAC/Custom Wire lease contained a "Fire Damage Release" clause, whereby the parties acknowledged the property was "in dangerous proximity" to railroad tracks and that "there will be constant danger of injury and damage by fire, and the Lessee accepts this Lease subject to such danger."

3

In August 1992, Harbison-Fischer moved for summary judgment against MOPAC and Custom Wire.  Harbison-Fischer asserted that (1) MOPAC's claims against it were barred by Texas's four-year statute of limitations on contracts, and (2) the MOPAC/Custom Wire lease established that Custom Wire -- and not Harbison-Fischer -- was liable for any claims relating to the demolition of the plant.  Custom Wire filed its own summary judgment motion in September 1992, arguing that Harbison-Fischer was not a party to the MOPAC/Custom Wire lease and, therefore, had no standing to assert that Custom Wire is liable for damages.

In October 1992, before the state trial court had ruled on Harbison-Fischer's and Custom Wire's summary judgment motions, MOPAC amended its petition, deleting the contract cause of action against Harbison-Fischer but adding an action for recovery of environmental remediation costs.[2]  Harbison-Fischer then removed the case to federal court because MOPAC's action for remediation costs arises under federal law.  Recognizing that Harbison-Fischer and Custom Wire had not answered MOPAC's amended petition, the federal district court ordered the parties to answer and re-file their respective summary judgment motions.[3]

Harbison-Fischer at the same time moved for leave to amend its notice of removal because the state court had granted summary

[2]Fort Worth had ordered MOPAC to demolish the plant and remediate the site.

[3]The order to answer MOPAC's amended petition was made pursuant to FED. R. CIV. P. 15(a), whereas the order to re-file the summary judgment motions was made pursuant to LOCAL R. 5.2(a).

4

judgment in favor of Harbison-Fischer as to MOPAC's state law tort claims against Harbison-Fischer.[4]  In an attempt to secure the benefit of the state court's decision (which was made subsequent to Harbison-Fischer's original notice of removal), Harbison-Fischer sought to amend its notice removal to stress that it intended to remove only MOPAC's environmental remediation claim.  The federal district court, however, denied Harbison-Fischer's motion, noting additionally that the state court's decision was meaningless because it was rendered after Harbison-Fischer had properly removed the case.[5]

In December 1992, the district court granted Harbison-Fischer's summary judgment motion as to MOPAC on the basis of limitations but denied its motion as to Custom Wire.  The court also denied Harbison-Fischer's claim against MOPAC and Custom Wire for attorneys' fees.  The court granted Custom Wire's summary judgment motion against Harbison-Fischer.  The court then entered final judgment for Harbison-Fischer and Custom Wire, stating that MOPAC and Harbison-Fischer, respectively, take nothing on their claims.

The following month MOPAC moved for a new trial, asserting that the scope of Harbison-Fischer's summary judgment motion had been limited to MOPAC's state law claims and that MOPAC's

---

[4]Concurrent with its motion for leave to amend its removal notice, Harbison-Fischer alternatively filed a motion to remand the state law claims.

[5]The district court also denied Harbison-Fischer's motion to remand the state law claims because "piecemeal remand" would be "inappropriate."

environmental remediation claim had been reserved for further deliberations. The district court denied MOPAC's motion for a new trial.[6] MOPAC now appeals the court's summary judgment for Harbison-Fischer. Harbison-Fischer appeals the court's summary judgment for Custom Wire and the court's denial of its claim for attorneys' fees.

## II.

We review a summary judgment de novo, applying the same standard as the district court. D.E.W., Inc. v. Local 93, Laborers' Int'l. Union, 957 F.2d 196 (5th Cir. 1992). Therefore, summary judgement is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In reviewing the facts contained therein, we draw all inferences in a light most favorable to the nonmoving party. McCarty v. United States, 929 F.2d 1085, 1089 (5th Cir. 1991).

## III.

We begin our analysis by reviewing the district court's summary judgment for Harbison-Fischer as to all of MOPAC's claims. For reasons that are apparent below, we will separate our discussion of the state law tort claims from the environmental remediation claim.

---

[6]Harbison-Fischer also moved for a new trial, but only if the court granted MOPAC's motion. Once the court denied MOPAC's motion, Harbison-Fischer's motion became moot.

A.

MOPAC first argues that the district court improperly granted Harbison-Fischer summary judgment as to its state law tort claims because Harbison-Fischer insufficiently pleaded an essential element of its case with which it had the burden of proof at trial. Specifically, MOPAC argues that because Harbison-Fischer asserted that MOPAC's claims were barred by limitations, which is an affirmative defense, Harbison-Fischer bore the burden of establishing when MOPAC's causes of action accrued. MOPAC had three outstanding tort claims when Harbison-Fischer moved for summary judgment: (1) continuing trespass, (2) continuing nuisance, and (3) interference with contract.[7]

MOPAC recognizes that its breach of contract action was barred by Texas's four-year contract statute of limitations but asserts that the four-year statute became irrelevant once the contract claim was deleted. The proper limitations period, MOPAC asserts, is the separate tort limitations period. MOPAC essentially argues that Harbison-Fischer failed to meet its burden by relying on the contracts limitations period rather than the torts limitations period. Thus, it concludes, the district court's ruling that MOPAC's claims were "barred by limitations" was inappropriate. MOPAC's argument is not without merit. Notwithstanding its claims to the contrary, Harbison-Fischer never outlined to the court the applicable torts statute of

---

[7]The interference with contract claim specifically alleges that Harbison-Fischer frustrated MOPAC's ability to sell its property when Harbison-Fischer refused to remove the buildings.

7

limitations or explained why, in its opinion, MOPAC was barred by such limitations. Because it asserted a limitations defense, Harbison-Fischer bore this burden at the summary judgment stage.

But Harbison-Fischer's omission does not require us to reverse the district court's summary judgment at this point. Although the court based its summary judgment for Harbison-Fischer on limitations, Harbison-Fischer provided an alternative basis for granting its motion: lack of ownership. Specifically, Harbison-Fischer argued that before its burden of establishing its affirmative defense arose, MOPAC had to make a threshold showing that Harbison-Fischer owned the buildings when the damages occurred.

We agree with Harbison-Fischer's analysis. MOPAC's three state-law tort claims are premised on the assumption that Harbison-Fischer, in fact, owns the buildings that gave rise to MOPAC's tort claims. Harbison-Fischer clearly cannot be liable for trespass or nuisance for buildings that it does not own. Similarly, Harbison-Fischer's refusal to remove the buildings cannot make it liable for contract interference when it does not own the buildings and, therefore, has no duty to remove them. Ownership, in other words, is a necessary element of each of MOPAC's claims. See, e.g., City of Arlington v. City of Fort Worth, 873 S.W.2d 765, 769 (Tex. Ct. App. 1994); Allen v. Virginia Hill Water Supply Corp., 609 S.W.2d 633, 635-36 (Tex. Ct. App. 1980). MOPAC would have had the burden of proof at trial to establish that element, regardless of whether Harbison-

8

Fischer satisfied its own burden, i.e., the affirmative defense of limitations.

The appropriateness of the district court's summary judgment therefore narrows to a question of whether Harbison-Fischer tendered sufficient evidence to demonstrate that no genuine issue of material fact existed as to whether it owned the buildings. To show that it no longer owns the buildings, Harbison-Fischer submitted various items in conjunction with its summary judgment motion. Harbison-Fischer asserts that its evidence establishes, if anything, that MOPAC -- and not Harbison-Fischer -- owns the buildings.

Harbison-Fischer points to three items, the first being the August 1992 affidavit of George Stowe, Harbison-Fischer's vice president of manufacturing. Stowe states that Harbison-Fischer had not occupied the premises since February 1984 and that, since then, numerous individuals contacted Harbison-Fischer about leasing or purchasing the property from MOPAC. Stowe further states that in each instance, Harbison-Fischer disclaimed any ownership interest in the buildings and referred the individuals to MOPAC.

Second, Harbison-Fischer relies on MOPAC's eviction letter in January 1985 to Bill Mims, the head of the machine tools operation that had occupied the buildings without consent. MOPAC advised Mims that because "there is no lease agreement between the respective parties, you are unlawfully trespassing upon these premises." MOPAC ordered Mims to vacate the buildings and warned

him that it would seek any costs incurred to forcibly remove him and his company's belongings.

Third, and most importantly, Harbison-Fischer points to the MOPAC/Custom Wire lease as evidence that MOPAC -- not Harbison-Fischer -- owned the buildings. The July 1987 lease, inter alia, provided for Custom Wire to lease from and pay rent to MOPAC for use of the buildings, to maintain proper care of the buildings, to pay taxes on the buildings, and to refrain from subletting the buildings. The lease also permitted MOPAC to re-enter the premises in the event that Custom Wire defaulted. Harbison-Fischer argues that the MOPAC/Custom Wire lease, combined with the Stowe affidavit and the eviction letter to Mims, demonstrate that MOPAC assumed dominion and control over the buildings and, hence, became the owner. Accordingly, Harbison-Fischer concludes, MOPAC now is estopped from attempting to establish Harbison-Fischer as the owner.

MOPAC failed to respond to Harbison-Fischer's motion for summary judgment in federal district court[8] and thus never directly rebutted Harbison-Fischer's motion and accompanying

---

[8]MOPAC, rather limply, argues that it believed a response was not necessary because, when the district ordered Harbison-Fischer and Custom Wire to re-file their motions for summary judgment, the court did not require MOPAC to file a response. MOPAC contends that the response it filed to Harbison-Fischer's summary judgment motion in state court was sufficient. The district court correctly points out that "there would have been no point whatsoever in having [Harbison-Fischer] and [Custom Wire] refile their motions in accordance with the Local Rules if [MOPAC] was not required to respond." Notwithstanding MOPAC's major procedural mistake, the district court below granted Harbison-Fischer summary judgment on the merits. We therefore will review the issue on the merits.

10

evidence. MOPAC claims, however, that a genuine issue of material fact as to ownership still existed at that point because of the termination provision in the MOPAC/Harbison-Fischer lease, which Harbison-Fischer also had submitted with its motion. The provision clearly states that MOPAC would take title to the buildings only if Harbison-Fischer failed to remove them after expiration of the lease and, shortly thereafter, MOPAC notified Harbison-Fischer that it (MOPAC) had elected to take title. MOPAC notes that it never elected to take title to the buildings. Consequently, MOPAC argues, ownership of the buildings has always remained with Harbison-Fischer.

We agree with Harbison-Fischer that, based on its conduct beginning in January 1985, MOPAC now is estopped from asserting that Harbison-Fischer still owns the buildings. Under Texas law, "the principle of quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position he has previously taken." Enochs v. Brown, 872 S.W.2d 312, 317 (Tex. Ct. App. 1994). The doctrine applies in those cases where it would be unconscionable to allow a person to maintain a position inconsistent with one in which he accepted a benefit. Stuebner Realty 19 v. Cravens Road 88, Ltd., 817 S.W.2d 160, 164 (Tex. Ct. App. 1991). The effect of estoppel is to prevent the assertion of what would otherwise be an unequivocal right. LaRue v. LaRue, 832 S.W.2d 387, 391 (Tex. Ct. App. 1992). The MOPAC/Custom Wire lease in particular leads us to conclude

11

that MOPAC is estopped from denying ownership of the buildings.
The lease required Custom Wire to:

> (1)  pay MOPAC $500 a month rent from September 1987 to March 1988, and then $2,000 a month thereafter;
>
> (2)  pay any taxes levied upon the buildings during the course of the lease;
>
> (3)  refrain from subletting the buildings or assigning the lease;
>
> (4)  paint the buildings with a color satisfactory to MOPAC;
>
> (5)  submit to MOPAC for approval any proposed additions to or alterations of the buildings; and

The lease also established two conditions precedent, other than expiration of the lease, that would allow MOPAC to reenter the premises:

> (1)  Custom Wire fails to remediate any portion of the premises that burns;[9] and
>
> (2)  Custom Wire defaults on the lease.

Given the broad benefits MOPAC afforded itself in the lease, it cannot now claim that it does own the buildings to the disadvantage of Harbison-Fischer.  If MOPAC believed then, as it so vigorously asserts now, that Harbison-Fischer owned the buildings, then it would have made reference to that fact and conditioned the Custom Wire lease on Harbison-Fischer's right of ownership.  But the MOPAC/Custom Wire lease mentions neither Harbison-Fischer's alleged ownership interest nor the MOPAC/Harbison-Fischer lease.  It is wholly unconditional and

---

[9]This provision also permitted MOPAC, upon reentry, to remediate the property itself and then seek reimbursement from Custom Wire.

12

noticeably silent as to any prior lessor/lessee relationship between MOPAC and Harbison-Fischer.

Even though summary judgment was granted on the basis of limitations, we can affirm the district court on the alternate grounds asserted below. See, e.g., Harbor Ins. Co. v. Urban Constr. Co., 990 F.2d 195, 199 (5th Cir. 1993) ("A grant of summary judgment may be affirmed on a legal basis not ruled upon below. `We may affirm even in situations in which the district court's ruling was incorrect, as long as the result was proper.'") (quoting Texas Refrig. Supply, Inc. v. FDIC, 953 F.2d 975, 980 (5th Cir. 1992)). Accordingly, we hold that because no genuine issue of material fact existed as to ownership of the buildings, the district court's summary judgment for Harbison-Fischer on MOPAC's state law tort claims was appropriate.

B.

We now take up the issue of MOPAC's environmental remediation claim.[10] MOPAC argues that the district court's summary judgment for Harbison-Fischer on that claim was improper because Harbison-Fischer had limited its summary judgment motion to just the state law tort claims. MOPAC, in fact, argues that Harbison-Fischer probably was as surprised as MOPAC when the district court ruled that MOPAC take nothing on all of its claims against Harbison-Fischer. MOPAC points to the motion itself,

_____

[10]MOPAC also pleaded a state environmental claim against Harbison-Fischer, but we cannot glean from MOPAC's pleading the precise state environmental claim it has pled. Thus, we will treat MOPAC's environmental claim as solely a federal one.

13

wherein Harbison-Fischer stated that the district court should grant summary judgment as to MOPAC's "State Law Claims" if it chose to retain jurisdiction over them. MOPAC also notes that Harbison-Fischer's motion does not address the elements of a federal environmental claim under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601-75, and the absence of a genuine issue of material fact as to each element. Finally, MOPAC relies on the parties' joint status report to the district court in December 1992. The report, which was submitted two weeks prior to the court's ruling, states that, with regard to the environmental remediation claim, "[t]he parties estimate that they will need approximately six (6) months to determine the necessity for joinder of additional parties."

Harbison-Fischer insists that its motion was intended to cover all of MOPAC's claims. Like MOPAC, Harbison-Fischer relies on the wording of its motion. It notes that its motion requested "a full summary judgment as a matter of law against both MOPAC and Custom Wire" and also addressed the issue of hazardous waste and substances by quoting directly from the MOPAC/Custom Wire lease. As for the joint status report, Harbison-Fischer characterizes it as incompetent summary judgment evidence because it was filed after Harbison-Fischer's motion for summary judgment was filed.

We agree with MOPAC that Harbison-Fischer's motion was limited to just MOPAC's state law claims. The movant has the

14

initial burden of demonstrating the absence of material fact issues.  Abbott v. Equity Group, Inc., 2 F.3d 613, 619 (5th Cir. 1993).  Harbison-Fischer failed to meet that burden.  Its motion neither delineates the precise elements of MOPAC's environmental remediation claim nor even attempts to demonstrate how no genuine issue of material fact exists as to any of them.  As for Harbison-Fischer's contention that the motion requests a "full summary judgment," that sentence immediately follows the sentence wherein Harbison-Fischer refers to the "State Law Claims."  We construe the juxtaposition of these phrases to mean that Harbison-Fischer sought summary judgment only as to all three of MOPAC's state law tort claims.

We note that our conclusion here is consistent with the wealth of evidence in the record that speaks to Harbison-Fischer's state of mind at the time of the court's summary judgment ruling.  To begin with, the timing of Harbison-Fischer's motion is telling.  Harbison-Fischer filed its motion in December 1992, less than three weeks after the state trial court notified the parties that it had granted Harbison-Fischer summary judgment on MOPAC's tort claims.  To secure the benefit of that ruling, Harbison-Fischer naturally attempted to remand MOPAC's state claims to the state court and, in the event the federal district denied Harbison-Fischer's request, sought a similar ruling from the federal court.

The timing of the joint status report is equally telling. The report was filed on December 14, 1992, ten days after

Harbison-Fischer moved for summary judgment.  The report's reference to the parties' need for an additional six months for discovery immediately followed a recitation of pending motions in the case, including Harbison-Fischer's summary judgment motion. Harbison-Fischer alleges on appeal that it moved for summary judgment on all of MOPAC's claims.  But surely Harbison-Fischer would not have moved for summary judgment on a claim that it contemporaneously believed required an additional six months of discovery.  As for Harbison-Fischer's claim that the joint status report is incompetent evidence, we note that the controlling time is <u>not</u> when Harbison-Fischer filed its summary judgment motion but when the district court's ruling was made.  We have stated that "our review [of a summary judgment] is confined to an examination of materials before the lower court at the time the ruling was made."  <u>Nissho-Iwai Am. Corp. v.  Kline</u>, 845 F.2d 1300, 1307 (5th Cir. 1988).  Here, the joint status report, which was compiled at the request of the court, was filed two weeks before the court's summary judgment ruling.  The report therefore is competent evidence, particularly with regard to the scope of Harbison-Fischer's summary judgment motion.

Having concluded that Harbison-Fischer's summary judgment motion was limited to MOPAC's state law tort claims, we now consider whether summary judgment for Harbison-Fischer on MOPAC's environmental remediation claim was appropriate.  Given the limited scope of Harbison-Fischer's request, the only explanation for the court's ruling is that it chose to grant Harbison-Fischer

16

summary judgment sua sponte, and we will treat the court's ruling as such.  District courts are empowered to grant summary judgment sua sponte, <u>provided</u> the losing party is on notice that it had to come forward with all of its evidence.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986); <u>Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.</u>, 932 F.2d 442, 444-45 (5th Cir. 1991).  We find that MOPAC had no such notice.  First, as we already have concluded, Harbison-Fischer had not moved for summary judgment on MOPAC's environmental remediation claim.  Second, at the time of the court's ruling, the parties had not conducted discovery on MOPAC's remediation claim because it was less than three months old.  As the joint status report indicates, the parties obviously intended to use the coming months to proceed with discovery and join additional parties as to that claim.  We therefore conclude that the district court's sua sponte summary judgment for Harbison-Fischer on the remediation claim was inappropriate.[11]

### III.

We now address the district court's summary judgment for Custom Wire on Harbison-Fischer's liability claim against Custom Wire.  Harbison-Fischer argues that the MOPAC/Custom Wire lease establishes that Custom Wire -- and <u>not</u> Harbison-Fischer -- is liable for any environmental remediation costs MOPAC asserts

---

[11]Our ruling here <u>does not</u> mean that summary judgment for any party on this claim will never be appropriate.  We mean only that <u>at this point in the litigation</u>, summary judgment for Harbison-Fischer is inappropriate.

17

against Harbison-Fischer.  Harbison-Fischer notes that the MOPAC/Custom Wire lease clearly provides that, as between MOPAC and Custom Wire, Custom Wire is responsible for remediation responsibilities arising during the course of the Custom Wire's lease.  Harbison-Fischer further contends that it has a right to sue for enforcement of the MOPAC/Custom Wire lease because it is a third-party beneficiary of that lease.  Harbison-Fischer claims that once Custom Wire delivered Harbison-Fischer a copy of the MOPAC/Custom Wire lease in exchange for Harbison-Fischer's building plans, Harbison-Fischer became a third-party beneficiary to the lease.

Custom Wire responds that the question of third-party beneficiary status is determined by examining the MOPAC/Custom Wire lease itself.  Because the lease was never intended to benefit Harbison-Fischer, Custom Wire argues, Harbison-Fischer cannot assert third-party beneficiary status.  Custom Wire also points out that Harbison-Fischer failed to cite any authority for its proposition that the exchange between Harbison-Fischer and Custom Wire somehow vested Harbison-Fischer with such status.

We agree with Custom Wire that Harbison-Fischer is not a third-party beneficiary under the MOPAC/Custom Wire lease and, therefore, cannot sue for enforcement of the lease.  Under Texas law, a non-party to a contract has a heavy burden when it claims third-party beneficiary status.  RTC v. Kemp, 951 F.2d 657, 662 (5th Cir. 1992).  The claimant must show that (1) it was not privy to the contract, (2) the contract was actually made for the

18

claimant's benefit, and (3) the contracting parties intended for the claimant to benefit from the contract.  <u>Hellenic Inv., Inc., v. Kroger Co.</u>, 766 S.W.2d 861, 864 (Tex. Ct. App. 1989).  As for the question of intent (i.e., the second and third elements), we begin with the presumption that parties contract for themselves and that a contract will not be construed to benefit a third party unless the contracting parties clearly intended to do so.  <u>Talman Home Fed. Sav. & Loan Assoc. v. American Bankers Ins.</u>, 924 F.2d 1347, 1351 (5th Cir. 1991).  We have scoured the MOPAC/Custom Wire lease to find any such intent and can find none.  The lease never mentions Harbison-Fischer, particularly with regard to the allocation of remediation responsibilities.  Furthermore, Harbison-Fischer fails to cite any authority for its novel theory that the exchange between Harbison-Fischer and Custom Wire vested Harbison-Fischer with third-party beneficiary status.  Because no genuine issue of material fact existed as to Harbison-Fischer's status, we conclude that the district court's summary judgment for Custom Wire on Harbison-Fischer's claim was appropriate.[12]

IV.

Finally, we address Harbison-Fischer's claim for attorney's fees.  Harbison-Fischer failed to cite authority -- below or on

_____

[12]We stress that our ruling here is limited to Harbison-Fischer's claim that Custom Wire is liable to MOPAC for remediation, here and now, based on the MOPAC/Custom Wire lease. We therefore are not precluding MOPAC and/or Harbison-Fischer, if they so choose, from joining Custom Wire pursuant to CERCLA as that claim proceeds.

19

appeal -- for its claim, and we decline to find any on its behalf.  The court's denial of Harbison-Fischer's request was proper.

V.

Accordingly, for the reasons stated above, we AFFIRM the district court's summary judgment for Harbison-Fischer on MOPAC's state law tort claims, REVERSE and REMAND for further proceedings the court's summary judgment for Harbison-Fischer on MOPAC's federal environmental remediation claim, AFFIRM the court's summary judgment for Custom Wire on Harbison-Fischer's liability claim pursuant to the MOPAC/Custom Wire lease, and AFFIRM the court's denial of Harbison-Fischer's request for attorney's fees.