United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 2, 2003**

Charles R. Fulbruge III
Clerk

Revised July 23, 2003

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 00-40731

---

RANDALL COGGIN,

Plaintiff-Appellee,

VERSUS

LONGVIEW INDEPENDENT SCHOOL DISTRICT; ET AL,

Defendants,

LONGVIEW INDEPENDENT SCHOOL DISTRICT,

Defendant-Appellant.

---

Appeal from the United States District Court
For the Eastern District of Texas

---

Before KING, Chief Judge, and JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, DENNIS, and CLEMENT, Circuit Judges.[*]

JAMES L. DENNIS, Circuit Judge:

    Randall Coggin brought this action under 42 U.S.C. § 1983

---

    [*] Judge Prado, who joined our court subsequent to en banc oral argument, did not participate in this decision.

1

against his former employer, a Texas independent school district, because its board of trustees terminated his employment contract without any kind of a hearing. After a bench trial, the district court rendered judgment in favor of Coggin. A divided panel of our court affirmed.[1] A majority of the judges in active service voted to rehear the case en banc.[2] We now affirm the judgment of the district court.

### I. Statutory Procedure for Termination of School Board Employees' Term Contracts

Under the Texas Education Code, a school board has the power to terminate a term contract and discharge a teacher at any time "for good cause as determined by the board."[3] Prior to terminating a term contract, however, the board must give the teacher notice of its proposed action.[4] If the teacher desires a pre-termination hearing under state law, he must file a written request with the state commissioner of education ("Commissioner") within 15 days of receiving notice of his proposed termination.[5] Within 10 business

---

[1] Coggin v. Longview Indep. Sch. Dist., 289 F.3d 326 (5th Cir. 2002).

[2] Coggin v. Longview Indep. Sch. Dist., 309 F.3d 307 (5th Cir. 2002).

[3] Tex. Educ. Code Ann. § 21.211(a)(1) (Vernon 1996). Under Texas law, each independent school district is considered a municipal governmental entity, id. § 11.151, and is governed by a board of trustees (i.e., a school board), id. § 11.051(a).

[4] Id. §§ 21.251(a)(1), 21.253.

[5] Id. § 21.253. The Commissioner is appointed by the governor with the advice and consent of the state senate, id. § 7.051, and

2

days of receiving a timely request for a hearing, the Commissioner must assign a hearing examiner to conduct a hearing in that particular case.[6] Not later than 45 days after the Commissioner receives a request for a hearing, the hearing examiner shall complete the hearing and recommend findings of fact, conclusions of law, and, if appropriate, the granting of relief.[7] The school board, not the Commissioner, is taxed with the costs of the hearing examiner, the shorthand reporter, and the production of a hearing transcript.[8]

After receiving the examiner's recommendation and the record of the hearing, the school board or its designated subcommittee must consider them and allow each party to present an oral argument to the board or subcommittee.[9] Within 10 days of that meeting, the board must announce a decision that includes findings of fact and conclusions of law and that may include a grant of relief.[10] The board may adopt, reject, or change the hearing examiner's conclusions of law or proposal for granting relief, and it may reject or change the hearing examiner's finding of facts not

___

heads the Texas Education Agency, id. §§ 7.002, 7.055.

[6] Id. § 21.254(c).

[7] Id. § 21.257.

[8] Id. § 21.255(e).

[9] Id. § 21.258.

[10] Id. § 21.259.

3

supported by substantial evidence in the record.[11]

Section 7.057(d) of the Texas Education Code provides that "[a] person aggrieved by an action of the agency or decision of the Commissioner may appeal to a district court in Travis County."[12] This appeal must be made by serving the Commissioner as in a civil suit, and the court shall determine all issues of law and fact at trial.[13]

## II. Factual and Procedural Background

Randall Coggin worked for the Longview Independent School District ("LISD") for more than 30 years. From 1983 until his discharge on September 13, 1999, Coggin supervised the LISD Career and Technology Education department. At the time of his discharge, Coggin was employed under a two-year term contract spanning the 1998-1999 and 1999-2000 academic years. Before receiving notice of his proposed termination, his performance appraisals were generally complimentary. On August 12, 1999, however, Coggin received a letter from the LISD's new superintendent notifying him that the school board proposed to terminate his employment contract for engaging in various alleged improprieties, including sexually harassing female subordinates, using LISD resources for his personal benefit, impeding the LISD's investigation of his

---

[11] Id.

[12] Id. § 7.057(d)

[13] Id.

4

behavior, and falsifying asbestos records. On August 24, Coggin deposited copies of his written request for a hearing with the U.S. Postal Service for delivery via certified mail, properly stamped and addressed to the Commissioner and the school board. The school board received its copy of Coggin's request on August 26, but the Commissioner did not receive the request until August 30. Because the Commissioner mistakenly thought that Coggin's request must have been <u>received</u>, rather than <u>filed</u>, by August 27, 1999, he refused to appoint a hearing examiner. On September 2, 1999, the Commissioner mailed copies of a letter addressed to both Coggin and the LISD's counsel stating that (1) the Commissioner had received Coggin's written request for the appointment of a hearing examiner; (2) the request was dated and postmarked before the August 27 deadline for filing; (3) the Commissioner received the request on the third day following the deadline; but (4) the Commissioner would not appoint a hearing examiner because Coggin's request was received after the deadline. After Coggin received the Commissioner's September 2 letter, Coggin's attorney and the Commissioner engaged in a "flurry of correspondence" regarding the timeliness of Coggin's request for a hearing, but the Commissioner declined to reconsider his refusal to appoint a hearing examiner.[14]

On September 13, 1999, the LISD school board, without giving further notice to Coggin or any kind of a hearing, adopted a

---

[14] District Court's Memorandum Opinion at 10.

resolution discharging Coggin as an employee of the LISD. The LISD concedes that it was aware of the Commissioner's refusal to appoint a hearing examiner prior to the board's action. Thus, as the district court found, "[w]hen it terminated Coggin's contract, the LISD board had actual knowledge that Coggin had requested a hearing on the termination of his contract, the date on which he had requested it, and that no hearing of any kind had been held."[15]

On November 12, 1999, Coggin brought suit against the LISD, the Texas Education Agency ("TEA"), and the Commissioner under 42 U.S.C. § 1983 for depriving him of his property without due process of law. After the district court expressed its opinion that the TEA and the Commissioner had a valid Eleventh Amendment defense, Coggin dismissed his § 1983 claim against them, and the case proceeded solely against the LISD. Following a bench trial, the district court concluded that (1) Coggin timely filed his request for a hearing as required by state law; (2) the board had notice that Coggin had not received a hearing despite his timely request; (3) the board deprived Coggin of his property without due process when it terminated his employment contract without any kind of a hearing; (4) the LISD failed to prove that Coggin had engaged in the alleged misconduct and therefore had no cause to terminate his employment contract; and (5) Coggin was entitled to $215,894 in damages and attorney's fees. The LISD appealed.

---

[15] Id. at 10–11.

### III. <u>The LISD's Action Was the Sole Cause of<br>The Violation of Coggin's Right to Due Process</u>

On appeal the LISD does not dispute that its termination of Coggin's employment in the middle of his two-year term employment contract deprived him of a constitutionally protected property interest in continued employment, or that Coggin was entitled to constitutional due process in conjunction with the proposed termination of that employment.[16] Nor does it challenge or point to any error in the district court's determination that Coggin timely filed his request for a hearing.[17] LISD argues, instead, that any deprivation of Coggin's right to due process of law was caused by the Commissioner's refusal to appoint a hearing examiner, not by the school board's termination of his employment contract without a hearing: "The gravamen of this dispute is a question of causation."[18] Thus, the LISD contends that the Commissioner's action, to the exclusion of its own, should be considered the sole

---

[16] Defendant's Supp. En Banc Brief at 15.

[17] Indeed, the LISD insists that the matter of the timeliness of Coggin's request for the appointment of a hearing examiner is irrelevant to its appeal:

> Regardless of whether Coggin failed timely to file a request for hearing under those procedures or the Commissioner erred as a matter of state law in interpreting the TEA filing requirements, any such dispute (1) was not a dispute involving the School District, (2) was not caused by LISD, and (3) was waived when Coggin failed to pursue appropriate relief in court against TEA and the Commissioner.

<u>Id.</u> at 22.

[18] <u>Id.</u> at 9.

cause of the deprivation of due process and, therefore, that it is not responsible for the violation.

The LISD's irrevocable discharge of Coggin without a hearing just 4 business days after Coggin's receipt of the Commissioner's notice of refusal was the sole cause of the violation of Coggin's right to due process of law.[19] The LISD argues that the Commissioner's erroneous refusal to appoint a hearing examiner was the cause of the violation because Coggin waived his rights by not appealing the Commissioner's decision through the filing of a civil suit in state district court as provided for by § 7.057(d) of the Texas Education Code. We disagree.

Section 7.057(d) does not prescribe a time limit within which a person aggrieved by an action of the Commissioner must file an appeal in the district court. The Texas Administrative Procedures Act, however, provides that an aggrieved person is allowed 30 days to appeal from the decision of an administrative agency.[20] Thus,

_____

[19] The Commissioner mailed his erroneous decision to Coggin and LISD on Thursday, September 2, 1999. Because of the intervening Labor Day on September 6, 1999 and the two days required for delivery of other mail in this case, Coggin could not have received the Commissioner's September 2 letter until Tuesday, September 7, 1999. Therefore, the LISD discharged Coggin only 4 business days after he had received the Commissioner's September 2 letter.

[20] Tex. Gov't Code Ann. § 2001.176 (Vernon 2000) ("A person initiates judicial review in a contested case by filing a petition not later than the 30th day after the date on which the decision that is the subject of complaint is final and appealable."). A "contested case" means "a proceeding . . . in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing." Id. § 2001.003(1). The Texas courts have construed this definition to

8

Coggin was afforded 30 days by the Texas procedure to file his appeal in district court contesting the Commissioner's refusal to assign a hearing examiner.[21]  But the LISD's discharge of Coggin just 4 business days after his receipt of the Commissioner's notice of refusal prematurely cut off Coggin's right to appeal under § 7.057(d) and unreasonably foreclosed the possibility of a pre-termination due process hearing in his case.

Consequently, we conclude that Coggin did not waive his rights, and that the LISD's action of peremptorily discharging Coggin without a hearing just 4 business days after his receipt of the Commissioner's notice of refusal was the sole cause of the violation of his right to due process of law.  The Commissioner's erroneous decision was not a cause of the violation because, if the LISD had not peremptorily discharged Coggin, that error could have

---

include situations in which a state agency adjudicates a party's legal rights in an exercise of quasi-judicial authority, as opposed to making such an adjudication in an exercise of rule making authority.  See WBD Oil & Gas Co. v. Railroad Comm'n of Tex., 35 S.W.3d 34, 44 (Tex. App. 2001); Ramirez v. Texas State Bd. of Med. Exam'rs., 927 S.W.2d 770, 772 (Tex. App. 1996); Best & Co. v. Texas State Bd. of Plumbing Exam'rs., 927 S.W.2d 306, 309 & n.1 (Tex. App. 1996); Big D Bamboo, Inc. v. Texas, 567 S.W.2d 915, 918 (Tex. App. 1978).

[21] Even if the Administrative Procedures Act did not apply, "Texas law is firmly established that, when the statute fails to prescribe such a time limit, an appeal must be taken within a reasonable time."  Westheimer I.S.D. v. Brockette, 567 S.W.2d 780, 789-90 (Tex. 1978) (applying § 11.13(c), the predecessor to § 7.057(d), and citing Railroad Comm'n v. Aluminum Co. of Am., 380 S.W.2d 599 (Tex. 1964); Board of Water Eng'rs v. Colorado Mun. Water Dist., 254 S.W.2d 369 (Tex. 1953); Midas Oil Co. v. Stanolind Oil & Gas Co., 179 S.W.2d 243 (Tex. 1944); and Harkness v. Hutcherson, 38 S.W. 1120 (Tex. 1897)).

been corrected on appeal by the state district court's order that the Commissioner assign a hearing examiner in accordance with the Texas Education Code procedure.

## IV. The LISD Was the Responsible State Actor

This court's standard analysis for determining who is the state actor responsible for a constitutional violation in an action arising under § 1983 reaches the same result. In <u>Bush v. Viterna</u>, we identified three key questions that guide our analysis of causes of action arising under § 1983:

> [T]he first question must be whether a federally secured right has been affected. . . . The second question that must be asked is whether the alleged deprivation of a federal right has been accomplished by state action. . . . After one has found a deprivation of a federally secured right and has determined that it resulted from state action, one must ask a third question: Who is the state actor responsible for this violation?[22]

In this case, because Coggin was deprived of his protected employment right without the due process hearing to which he was entitled and which he did not waive, and because that deprivation involved two state actors, the only question presented is who is the state actor responsible for the violation—the LISD or the Commissioner.[23] This inquiry depends on an analysis of state law.[24]

---

[22] <u>Bush v. Viterna</u>, 795 F.2d 1203, 1209 (5th Cir. 1986).

[23] <u>See</u> <u>McMillian v. Monroe County, Alabama</u>, 520 U.S. 781, 784-85 (1997) ("A court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" (quoting <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701,

10

That is, in order to identify the responsible state actor, we must determine how state law distributes government functions.[25] But we do not _apply_ state law; rather, we "simply [use] state law to identify the persons responsible for an identified civil rights violation."[26]

Texas law assigns to the school board, as the governing body of the school district, exclusive policy making authority with regard to employment decisions. The state law is clear that the school board, alone, may terminate a term contract and discharge an employee upon a finding of good cause.[27] Only the school board can determine whether such cause exists and whether an employee should

---

737 (1989))).

[24] _Id._ at 786; _Jett_, 491 U.S. at 737 ("[W]hether a particular official has 'final policymaking authority' is a question of _state law_" (internal quotation omitted)); _Pembaur v. Cincinnati_, 475 U.S. 469, 483 (1986) ("[W]hether an official had final policy making authority is a question of state law."); _Bush_, 795 F.2d at 1209 (stating that the identify of the responsible state actor "will usually be answered exclusively by reference to state law and practice").

[25] _McMillian_, 520 U.S. at 786 ("[O]ur understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law."); _Regents of Univ. of Cal. v. Doe_, 519 U.S. 425, 429 n.5 (1997) ("[The] federal question can be answered only after considering the provisions of state law that define the agency's character.").

[26] _Bush_, 795 F.2d at 1209.

[27] Tex. Educ. Code Ann. § 21.211(a)(1) ("The board of trustees may terminate term contract and discharge a teacher at any time for . . . good cause as determined by the board . . . .").

11

be discharged as a result.[28]  Under the explicit terms of the statute, then, the LISD was the final policy and decision maker with respect to Coggin's discharge.

By comparison, under Texas law the Commissioner is not vested with any final policymaking authority concerning either the determination of cause to discharge or the actual discharge of school district employees.  The Commissioner's role of appointing a hearing examiner upon the timely filing of a request by an employee is ministerial and does not involve or require any policymaking.  Consequently, there was no policy authored by the Commissioner that caused the particular constitutional violation at issue.  In fact, there was no action taken by the Commissioner that deprived Coggin of his property without due process of law.  The Commissioner has no authority to discharge a school district employee or to require the school board to terminate an employment contract.  Indeed, the statute even requires that the school board, not the Commissioner, bear the costs of the hearing examiner, the shorthand reporter, and the production of a hearing transcript.  In short, the Commissioner could not have been responsible for causing the termination of Coggin's employment contract for cause without a pre-termination hearing because he could not determine cause or discharge Coggin.

Consequently, because the school board was the final arbiter

---

[28] Id. § 21.259.

of employment disputes under Texas law, it was exclusively responsible for hearing Coggin's arguments against discharge before resolving the questions of cause and discharge.[29] Contrary to the LISD's arguments, Texas law has not removed or separated from the school board the function of providing pretermination due process to its employees.[30] Under well-established federal law, the constitutional minimums for due process require that the final decision maker must hear and consider the employee's story before

---

[29] The Texas Supreme Court recognized this seminal fact in <u>Montgomery Independent School District v. Davis</u>, when it wrote in the context of a contract renewal case, "the Board retains the authority to make the ultimate decision of whether to renew a teacher's contract." 34 S.W.3d 559, 565 (Tex. 2000). Likewise, § 21.211(a)(1) makes clear that the board retains the exclusive authority to determine whether to terminate a teacher's contract for cause.

[30] The LISD, echoing the dissent to the panel opinion, asserts that Texas law separates the responsibility for providing a due process hearing from the responsibility for making termination decisions. The text of the Texas statutory scheme does not support this assertion. It is true that under the statutory scheme the function of appointing a hearing examiner has been given to the Commissioner, Tex. Educ. Code Ann. § 21.254, and that the function of gathering evidence, making findings of facts, and recommending conclusions of law has been given to an appointed hearing examiner, <u>id.</u> § 21.257. But the school board retains the exclusive duty to "consider the recommendation and record of the hearing examiner" and "shall allow each party to present an oral argument" before rendering its decision on whether there is cause to terminate and whether to discharge an employee. <u>Id.</u> § 21.258. In reaching such a decision, the school board has authority to make its own conclusions of law, including the crucial determination of whether there is cause to discharge. <u>See</u> <u>id.</u> § 21.259(b) (The school board "may adopt, reject, or change the hearing examiner's . . . conclusions of law."). It "may reject or change a finding of fact made by the hearing examiner" that is not supported by "substantial evidence." <u>Id.</u> § 21.259(c).

13

deciding whether to discharge the employee.[31]  The purpose of this is self-evident.  It is to provide a "meaningful opportunity to invoke the discretion of the decisionmaker . . . before the termination takes effect."[32]  The Texas law complies with the federal due process requirement by providing that the school board, as the exclusive decision maker with regard to employment termination decisions, "shall allow each party to present an oral argument to the board" before the board determines cause or discharges the employee.[33]  Thus, under the responsible state actor analysis we conclude that the LISD is the state actor responsible for the violation in this case.

## V. Answer to Amicus Argument

Contrary to the argument of the LISD's amicus, the Texas

---

[31] See, e.g., Zinermon v. Burch, 494 U.S. 113, 135 (1990) ("Because petitioners had state authority to deprive persons of liberty, the Constitution imposed on them the State's concomitant duty to see that no deprivation occur without adequate procedural protections.").

[32] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 543 & n.8 (1985) (citing Goss v. Lopez, 419 U.S. 565, 583-84 (1975), and Gagnon v. Scarpelli, 411 U.S. 778, 784-86 (1973)).  Both the employer and the employee benefit from this opportunity, for it ensures that the decision maker reaches an accurate decision.  Id. It thus protects persons "not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259 (1978).

[33] Tex. Educ. Code Ann. § 21.258(b); see also Londoner v. Denver, 210 U.S. 373, 386 (1908) ("[A] hearing in its very essence, demands that he who is entitled to it shall have the right to support his allegations by argument however brief, and, if need be, by proof, however informal."), cited in Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 16 n.17 (1978).

14

Association of School Boards Legal Assistance Fund, this decision in no way subjects a school board to liability for acts other than its own.  If the Commissioner does not abide the prescribed scheme, Texas gives an aggrieved school employee the right to appeal to a state district court, thereby providing constitutional due process.[34]  If the mandated procedure is followed, an employee will also have been afforded constitutional due process when a school board makes its final termination decision.  When a school board disregards the statutory scheme, here depriving the employee of his right to appeal, however, it may subject itself to liability, not for the act of another but for its own act.  To the point, had the school board given Coggin the statutorily allotted time to appeal the Commissioner's decision, there would have been no denial of due process.[35]

## VI. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[34] See Tex. Educ. Code Ann. § 7.057(d).

[35] Judge Jones mistakenly claims that the majority decides an issue that was not properly before the en banc court.  Whether the LISD or the Commissioner caused the due process violation has been the ultimate, concrete issue throughout the long history of this case.  Accordingly, in answering the causation question, the opinion does nothing more than properly exercise the court's duty "to enunciate the law on the record facts."  See Empire Life Ins. Co. of America v. Valdak Corp., 468 F.2d 330, 334 (5th Cir. 1972); see also Phillips v. Monroe County, Miss., 311 F.3d 369, 376 (5th Cir. 2002) ("We may affirm the district court's decision on any grounds supported by the record.").

15

AFFIRMED.

E. GRADY JOLLY, Circuit Judge, joined by JONES, SMITH, BARKSDALE, EMILIO M. GARZA, and CLEMENT, Circuit Judges, dissenting:

I could agree with the majority's theory of liability and outcome if its assumptions about the operation of state law had any basis in law or fact. Because those assumptions indisputably have no support, I cannot join the majority's opinion.

Throughout this litigation, the theory supporting LISD's liability for a constitutional violation has been marked by an inventive and evasive character whenever cornered by law or fact. The theory now expressed in the majority opinion for the first time, with no briefing from any party, is that Coggin was denied constitutional due process thus: LISD's termination of Coggin caused him to lose his statutory right to appeal the decision of the TEA Commissioner and thus caused a denial of procedural due process. If only that were true, I would join the majority.

The majority's opinion acknowledges that due process in this case is satisfied so long as Coggin had the right under state law to appeal the Commissioner's decision. "If the Commissioner does not abide the prescribed scheme, Texas gives an aggrieved school employee the right to appeal to a state district court, thereby providing constitutional due process." (Majority Op. at 15). "Section 7.057(d) of the Texas Education Code provides that '[a] person aggrieved by an action of the agency or decision of the Commissioner may appeal to a district court in Travis County.' This appeal must be made by serving the Commissioner as in a civil suit,

17

and the court shall determine <u>all</u> issues of law and fact at trial." (Majority Op. at 4)(footnote omitted)(emphasis added).

However, the majority assumes that "[t]he LISD's irrevocable discharge of Coggin without a hearing just 4 business days after Coggin's receipt of the Commissioner's notice of refusal was the sole cause of the violation of Coggin's right to due process of law." (Majority Op. at 8). "[T]he LISD's discharge of Coggin just 4 business days after his receipt of the Commissioner's notice of refusal prematurely cut off Coggin's right to appeal under § 7.057(d) . . . ." (Majority Op. at 9). "The Commissioner's erroneous decision was not a cause of the violation because, if the LISD had not peremptorily discharged Coggin, that error could have been corrected on appeal . . . ." (Majority Op. at 9). Thus, the majority concludes that "had the school board given Coggin the statutorily allotted time to appeal the Commissioner's decision, there would have been no denial of due process." (Majority Op. at 15).

Yet the majority fails to explain how the termination of Coggin denied him the right to appeal his case to the Travis County district court. It is of course plain that the termination did not cause Coggin physically or procedurally to lose his right to appeal the Commission decision. The statute was still there, the district court in Travis County was still there, some 26 days - by the majority's calculation - remained in his appeal period, and Coggin still had free will. The majority seems to assume, without

18

expressly saying so, that his termination made any appeal of the Commissioner's decision moot. Of course, neither the majority, nor I, nor any other judge on this court, nor any party, knows whether this assumption contains the slightest degree of correctness in fact or law. It is only an assumption tailored from whole cloth, for a specific fit. No brief has been filed raising the point. No argument is made by the majority that the statute supports such an assumption. No argument is made by the majority that case law supports any such assumption. The majority simply offers the theory as so many inspired words.

On the other hand, a more reasonable assumption would posit that had Coggin exercised his right to appeal – a right that no one has denied existed – a complete remedy would have been available. It is easily assumed that LISD would have been a proper party to that appeal. If on appeal the court had concluded that the Commissioner erred in rejecting Coggin's petition, it is a plausible assumption that the state court would have exercised its equitable powers and further would have held Coggin's termination a nullity under state law and ordered him reinstated pending the outcome of the TEA hearing, thus providing him a whole remedy ("the [Travis County district] court shall try all issues of law and fact . . . ." § 7.057 (emphasis added)). Assuming, however, the Travis County district court determined it had jurisdiction only to address the error of the TEA Commissioner, another scenario is equally plausible, plainly demonstrating that whatever the status

19

of his appeal might have been, it was not moot. If Coggin had exercised his right to appeal – a right, I repeat, no one denied existed – and if Coggin had chosen to appeal only the Commissioner's decision, he could have taken that judgment to the appropriate state court and obtained injunctive relief reinstating him pending the outcome of the TEA hearing he was denied. Both these scenarios are assumptions enjoying more reasonable speculative bases than the majority facilely adopts to support the conclusion necessary for the result it thinks is appropriate.

In short, the assumption of the majority that his termination <u>caused</u> the denial of due process by rendering his right to appeal moot is speculation of an unrestrained sort, which indeed seems contrary to reason and logic.

I could agree with the majority opinion if <u>anywhere</u> in the record it were evident that the plaintiff had met his burden of proof to support the majority's new-found, unbriefed, unargued theory that his termination denied him an effective appeal of the Commissioner's decision. But there is <u>nothing</u> in the record – or the law – to support the majority's theory – and the majority apparently does not argue that there is. Such is the consequence of attempting to develop arguments never presented by anyone at any time in order to tailor an outcome for a favored party.

I can appreciate the equities that drive the majority to try to fashion some relief in this case. During the pretermination process as provided by the Texas statute, Mr. Coggin got entangled

20

in errors and alleged errors, which he did not appeal.  However, because both Coggin and the majority have failed to carry their respective burdens of proof and persuasion, to explain <u>how</u> his termination in fact eviscerated his right to appeal, the question of causation remains unanswered, I am unable to join in the opinion, and I respectfully dissent.[36]  Finally, given what I regard as the complete failure of the majority to confect some credible constitutional analysis for a violation of due process, I join the dissents of Judges Jones and Garza.

---

[36]I do note that the majority opinion does not challenge or deny the correctness of a single assertion made in this dissent.  The majority would thus seem to admit there is no record or legal support for its theory of liability, thereby calling into question not only footnote 35 of its opinion, but its entire opinion as well.

EDITH H. JONES, Circuit Judge, joined by JOLLY, SMITH, BARKSDALE, EMILIO M. GARZA, and CLEMENT, Circuit Judges, dissenting:

I fully concur in Judge Emilio Garza's excellent dissent. I am compelled by precedent, however, to comment on the majority's decision to base its opinion on a theory never raised by the parties in this case; namely, the theory that LISD fired Coggin too quickly and failed to give Coggin proper time to seek state court judicial review of the Commissioner's decision not to allow a hearing. See Judge Emilio Garza's Dissent at 7.

The problem has been colorfully, if hyperbolically, described by our brethren on the Seventh Circuit: "Judges are not like pigs, hunting for truffles buried in briefs."[37] United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991). Today, the majority, unable to find a truffle in the briefs, has simply created an issue never raised by the parties either before the district court[38] or

---

[37] "It is reasonable to assume that just as a district court is not required to 'scour the record looking for factual disputes,' it is not required to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case." Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir. 1995) (quoting Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994)) (internal citations omitted).

[38] The district court specifically noted that "[t]he parties have cited no law that allows for review of the Commissioner's failure to assign a hearing examiner." Memorandum Opinion, p.17, Case No. 6:99-CV-658, (E.D. Tex. May 16, 2000). The district court further stated the parties did not raise or suggest the "relevance or applicability of Tex. Educ. Code Ann. § 7.057," upon which the

22

the panel of this court which first heard the case,[39] or in the supplemental briefs filed prior to en banc rehearing.[40] Like some of my former and current colleagues on this court, I find such behavior by an en banc court to demonstrate "a complete lack of appropriate judicial self-restraint." United States v. Lyons, 731 F.2d 243, 253 (5th Cir. 1984)(en banc)(Rubin and Williams, JJ. concurring in part and dissenting in part, joined by Politz, Tate, and Higginbotham, JJ.).

"It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."[41]

---

majority relies. Id. at 17 n.14. Thus, the court refused to consider it. Id.

[39] None of the parties' original briefs even refers to Tex. Educ. Code Ann. § 7.057.

[40] LISD's en banc brief, in a footnote, refers to and quotes from Judge Emilio Garza's panel dissent in which he suggests that Coggin could have filed suit in state district court in Travis County against the Commissioner under § 7.057(d). But LISD makes no attempt to present a reasoned argument that this was relevant to, or determinative of, the present case. Accordingly, any such argument was abandoned for being inadequately briefed. See Fed. R. App. P. 28(a)(5); L&A Contracting Co. v. S. Concrete Servs., Inc., 17 F.3d 106, 113 (5th Cir. 1994); Dardar v. Lafourche Realty Co., 985 F.2d 824, 831 (5th Cir. 1993). Moreover, a citation in LISD's brief, without more, could hardly furnish the basis for this court to grant relief to Coggin, who never even cited, much less argued, the provision.

[41] "Although we can affirm a summary judgment on grounds not relied on by the district court, those grounds must at least have been proposed or asserted in that court by the movant." Johnson v. Sawyer, 120 F.3d 1307, 1316 (5th Cir. 1997); see also Breaux v. Dilsaver, 254 F.3d 533, 538 (5th Cir. 2001) ("Although this court may decide a case on any ground that was presented to the trial court, we are not required to do so."); Leverette v. Louisville Ladder Co., 183 F.3d 339, 342 (5th Cir. 1999) ("This Court will not

23

<u>Singleton v. Wulff</u>, 428 U.S. 106, 120 (1976); <u>Conley v. Bd. of Trs. of Grenada County Hosp.</u>, 707 F.2d 175, 178 (5th Cir. 1983) ("As a general principle of appellate review, we refuse to consider issues not raised below."). We deviate from this rule only in extraordinary circumstances. <u>Leverette</u>, 183 F.3d at 342. "Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it." <u>N. Alamo Water Supply Corp.</u>, 90 F.3d at 916. As this court has explained, such circumstances exist when "the asserted error is so obvious that the failure to consider it would result in a miscarriage of justice." <u>Conley</u>, 707 F.2d at 178. Given the closeness of this case, which is readily apparent from the split among the members of this court, one cannot say that the resolution of this newly raised argument is obvious.

The majority's decision to wander down the road they have chosen is particularly regrettable in light of the en banc court's

---

consider an issue that a party fails to raise in the district court absent extraordinary circumstances."); <u>Forbush v. J.C. Penney Co.</u>, 98 F.3d 817, 822 (5th Cir. 1996) ("Furthermore, the Court will not allow a party to raise an issue for the first time on appeal merely because a party believes that he might prevail if given the opportunity to try a case again on a different theory."); <u>N. Alamo Water Supply Corp. v. City of San Juan, Tex.</u>, 90 F.3d 910, 916 (5th Cir. 1996) ("We will not consider an issue that a party fails to raise in the district court, absent extraordinary circumstances."); <u>Mo. Pac. R.R. v. Harbison-Fischer Mfg. Co.</u>, 26 F.3d 531, 538 (5th Cir. 1994) ("[W]e can affirm the district court on the alternate grounds asserted below."); <u>FDIC v. Laquarta</u>, 939 F.2d 1231, 1240 (5th Cir. 1991) (refusing to affirm summary judgment on grounds "neither raised below ... nor even raised sua sponte by the district court").

24

nearly-unanimous statements of just five years ago in United States
v. Brace, 145 F.3d 247 (5th Cir. 1998)(en banc).  In light of the
majority's dalliance, it is worthwhile to restate what this court
said in Brace:

> It goes without saying that we are a court of review, not
> of original error.  Restated, we review only those issues
> presented to us; we do not craft new issues or otherwise
> search for them in the record.  E.g., United States v.
> Johnson, 718 F.2d 1317, 1325 n.23 (5th Cir. 1983) (en
> banc) (we will not review improper jury instruction if
> neither raised in trial court nor claimed on appeal to be
> error).  It is for the parties, those who have a stake in
> the litigation, to decide which issues they want to
> pursue, at trial and on appeal.  Diverse reasons underlie
> the choices the parties make.  Likewise, other obvious
> factors come into play, such as judicial efficiency and
> economy, fairness to the courts and the parties, and the
> public interest in litigation coming to an end after the
> parties have had their fair day in court.  Cf. United
> States v. Atkinson, 297 U.S. 157, 159, 56 S. Ct. 391, 392
> 80 L. Ed. 555 (1936); United States v. Olano, 507 U.S.
> 725, 731, 113 S. Ct. 1770, 1776, 123 L. Ed. 2d 508
> (1993); United States v. Calverley, 37 F.3d 160, 162 (5th
> Cir. 1994) (en banc), cert. denied, 513 U.S. 1196, 115 S.
> Ct. 1266, 131 L. Ed. 2d 145 (1995).  In short, it is not
> for us to decide which issues should be presented, or to
> otherwise try the case for the parties.

> Our role is indeed limited.  Concerning our not acting as
> legislators, Justice Cardozo admonished that a judge "is
> not a knight-errant, roaming at will in pursuit of his
> own ideal of beauty or of goodness".  Cardozo, The Nature
> of the Judicial Process 141 (1921).  Needless to say, the
> same is true regarding our not addressing issues not
> presented to us.

Brace, 145 F.3d at 255-56.  The same principle was endorsed
unanimously by the en banc court earlier.  See Thomas v. Capital
Sec. Servs., Inc., 836 F.2d 866, 884 n.25 (5th Cir. 1988) (en banc)
("As an appellate court, we decline to entertain issues not raised
in, or decided by district courts.").  The majority have failed

25

even to cite, much less distinguish or otherwise explain their departure from en banc precedents. They advance no authority to support their novel approach to the judicial craft.

Further, as Justice Blackmun wrote on behalf of a unanimous Supreme Court, the rule that appellate courts not consider issues that the parties failed to present to the lower court:

> is 'essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues... [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.' We have no idea what evidence, if any, petitioner would, or could, offer in defense of this statute, but this is only because petitioner has had no opportunity to proffer such evidence. <u>Moreover, even assumimg that there is no such evidence, petitioner should have the opportunity to present whatever legal arguments he may have in defense of the statute</u>.

<u>Singleton</u>, 428 U.S. at 120 (quoting <u>Hormel v. Helvering</u>, 312 U.S. 552, 556 (1941)) (emphasis added).

The dangers of deciding issues raised by the court sua sponte are well-illustrated by the proceedings before the Eleventh Circuit in <u>Stewart v. Dugger</u>, 847 F.2d 1486 (11th Cir. 1988) (<u>Stewart I</u>), <u>vacated by</u> 877 F.2d 851 (11th Cir. 1989) (<u>Stewart II</u>). In <u>Stewart I</u>, a habeas petitioner brought a claim for relief based on allegedly inappropriate comments made during voir dire by the trial court in violation of <u>Caldwell v. Mississippi</u>, 472 U.S. 320 (1985). <u>Stewart I</u>, 847 F.2d at 1489. The court denied relief on

26

these grounds.  The court, however, did not stop there.  The panel, in its subsequent opinion, characterized what happened next:

> While reviewing the Caldwell claim raised by Stewart and addressed above, this court noticed other occasions where defense counsel, the prosecutor and the trial judge touched on functions of the jury which might have been asserted as implicating Caldwell in a manner different from that which had been suggested by Stewart. The court sua sponte requested supplemental briefing and then addressed the merits of some, but not all, of these other, potential Caldwell issues. See Stewart v. Dugger, 847 F.2d 1486, 1489-1493.  (11th Cir. 1988).

Stewart II, 877 F.2d at 854.

The court in Stewart II accordingly reconsidered its decision in Stewart I to address certain Caldwell issues sua sponte and upon reconsideration, struck that part of the discussion in Stewart I.  Id. at 852 ("The court, sua sponte, reconsiders this case insofar as our previous opinion addressed an issue which had been raised by the court sua sponte and unadvisedly.  For the reasons stated, one section of our previous opinion . . . is stricken and a statement of the reasons for its being stricken is inserted.").  The court stated that it "unadvisedly" reached the issue because the Caldwell issues raised by the court were procedurally barred.  Stewart II, 877 F.2d at 854-55.  The court went on to note that the respondent, in its supplemental brief filed at the instruction of the court, pointed out that the petitioner's claim was procedurally barred.  Id. at 855 n.2.  The court then admitted that "[h]aving raised these issues by our own

27

motion perhaps led us to their resolution and caused us to overlook the procedural bar." Id.

Our sister circuit (as well as the majority in this case) would have been well served to follow the lead of the D.C. Circuit:

> Of course not all legal arguments bearing upon the issue in question will always be identified by counsel, and we are not precluded from supplementing the contentions of counsel through our own deliberation and research. But where counsel has made no attempt to address the issue, we will not remedy the defect, especially where, as here, "important questions of far-reaching significance" are involved.

Carducci v. Regan, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.) (quoting Alabama Power Co. v. Gorsuch, 672 F.2d 1, 7 (D.C. Cir. 1982)). The case before us is of far-reaching significance for Texas's scheme for teacher discipline and terminations that was carefully crafted to enhance teachers' rights while ensuring a fast decisional track. The majority opinion casts constitutional doubt on the scheme despite Coggin's concession that the statutorily mandated process is constitutional.

The American system of judicial decisionmaking is grounded on the adversary process. Vintson v. Anton, 786 F.2d 1023, 1025 (11th Cir. 1986) (noting that the adversary system is what "characterizes the judicial process under the Anglo-American common law"). "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal

28

questions presented and argued by the parties before them."[42] <u>Carducci</u>, 714 F.2d at 177. For this court to base its decision on grounds not raised by the parties is a "serious misadventure in the judicial process" and constitutes nothing less than the destruction of the cornerstone of the adversarial process. <u>Lyons</u>, 731 F.2d at 250 (Rubin and Williams, JJ. concurring in part and dissenting in part). Judge Posner has made the same point:

> This is a case in which the lawyer for a party <u>tells</u> the appellate court that he does <u>not</u> base his claim on grounds X and Y . . ., but the court's independent research and reflection persuade the court that the lawyer is wrong. If reversal on such grounds is proper, we no longer have an adversary system of justice in the federal courts.

<u>Hartmann v. Prudential Ins. Co. of Am.</u>, 9 F.3d 1207, 1215 (7th Cir. 1993).

Under the majority's opinion, LISD will lose its appeal based on an argument of which it had neither notice nor opportunity to respond. Receiving notice and being given the right to respond constitute the core of procedural due process. Therein lies the

---

[42] As Judge Phillips of the Fourth Circuit noted,

> [t]he most critical characteristic of the adversarial (as opposed to inquisitorial) system of litigation is the degree to which it gives over to parties acting through counsel a substantial degree of control over the litigation process. This control extends both to the formulation of the legal and factual issues to be laid before the court and to the presentation of factual proof and legal contentions on these issues to the decision maker.

<u>Hirschkop v. Snead</u>, 594 F.2d 356, 377 (4th Cir. 1979) (en banc) (Phillips, J., concurring).

29

ultimate irony.  The majority's opinion denies due process to LISD while simultaneously holding the school district liable for depriving Coggin of due process.

I respectfully dissent.

EMILIO M. GARZA, Circuit Judge, joined by JOLLY, JONES, SMITH, BARKSDALE, and CLEMENT, Circuit Judges, dissenting:

This is, in essence, a causation case. Specifically, we must address whether the LISD violated Coggin's procedural due process rights by terminating him without a hearing after the Commissioner determined that, under state law, Coggin had untimely filed his request for a hearing. Because I would find that the LISD did not violate Coggin's procedural due process rights, I respectfully dissent.

I

Section 1983 creates a cause of action against any person who, under color of law, "subjects, or causes to be subjected," a person "to the deprivation of [a constitutional right]."[43] In order to prevail on a § 1983 claim, this court has repeatedly held that it is not sufficient for a plaintiff to merely establish a violation of one of his constitutional rights. A plaintiff must also show a causal connection between the deprivation of that right and the actions of the defendant against whom relief is sought.

---

[43] Specifically, the text of § 1983 reads:
> Every person who, under the color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

*See, e.g., Neubauer v. City of McAllen*, 766 F.2d 1567, 1571 n.11 (5th Cir. 1985) (reversing judgment against some of the defendants in a § 1983 action because plaintiff failed to show that they personally caused the deprivation of a constitutional right); *Irby v. Sullivan*, 737 F.2d 1418, 1425 (5th Cir. 1964) ("To be liable under section 1983, a [defendant] must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the [defendant] and the constitutional violations sought to be addressed."). This causation requirement applies with equal force in cases where a § 1983 action is premised on a violation of procedural due process. *Reimer v. Smith*, 663 F.2d 1316, 1322 n.4 (5th Cir. 1981) ("It is axiomatic that a plaintiff cannot succeed in a § 1983 action if he fails to demonstrate a causal connection between the state official's alleged wrongful action and his deprivation of life, liberty, or property.").

The panel opinion conceded (as the majority opinion now concedes) that Coggin needed to establish causation to prevail, but contended that he had met that burden because the LISD made the final decision to terminate him knowing he had not received a hearing. Thus, the panel opinion concluded, the LISD deprived Coggin of his property without due process of law. *Coggin v. Longview Indep. Sch. Dist.*, 289 F.3d 326, 336-38 (5th Cir. 2002). The problem with the panel opinion's analysis, however, is that it focused on the wrong causation issue. It based its causation analysis on who deprived Coggin of his *protected property interest*, when the real issue is who deprived Coggin of his *procedural due process right*.

Careful consideration of the right to procedural due process reveals the heart of a due process violation. Procedural due process does not protect one from the deprivation of life, liberty or property, but rather "from the *mistaken or unjustified* deprivation of life, liberty, or property." *Carey*

32

*v. Piphus*, 435 U.S. 247, 259 (1978) (emphasis added).  In other words, the key to a procedural due process claim is whether the plaintiff was afforded the quantity of process to which he was constitutionally entitled prior to the deprivation of a protected interest.  In *Zinermon v. Burch*, the Supreme Court described the right to procedural due process as follows:

> The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. . . .  In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law. . . .*  The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.  Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.

494 U.S. 113, 125-126 (1990) (internal citations and footnote omitted); *see also Brewer v. Chauvin*, 938 F.2d 860, 864 (8th Cir. 1991) ("The complained-of constitutional violation is the denial of procedural due process, not the plaintiff's discharge from public employment.").  Stated simply, a plaintiff's due process rights are not violated because his property was taken from him; his rights are violated because he was denied a certain amount of process before his property was taken.  Because the essence of a procedural due process claim is whether or not the plaintiff was afforded constitutionally adequate process, the majority opinion's emphasis on who made the final decision to terminate Coggin is misplaced.

To determine whether the LISD caused the deprivation of Coggin's procedural due process right in this case, we must ask whether the LISD caused Coggin not to have a due process hearing. Based on the record in this case, the answer to this question is no. Under § 21.253 and § 21.254 of the Texas Education Code, the sole authority to appoint a state certified hearing examiner was vested in the Commissioner of the TEA. In this case, the Commissioner denied Coggin a hearing because, based on his interpretation of § 21.253, Coggin's request for a hearing was untimely. Even if one assumes that Coggin's rights were violated by the Commissioner's action, it was this mistake that caused Coggin to be denied a hearing and thus deprived him of his right to procedural due process. In contrast, the LISD did nothing to prevent Coggin from obtaining a pre-termination hearing. The LISD properly provided Coggin with notice of its intent to terminate his employment and of the measures he needed to take in order to preserve his right to a hearing. *See* TEX. EDUC. CODE ANN. § 21.251(a)(1). Once the Commissioner refused to appoint a hearing examiner, the LISD had no authority to order the Commissioner to change his mind or to appoint a certified hearing examiner on its own. *See* TEX. EDUC. CODE ANN. § 21.257. Because the actions of the LISD did not in any way cause the denial of Coggin's right to a hearing, the LISD cannot properly be said to have caused the deprivation of Coggin's right to procedural due process.

For the purposes of § 1983 liability, it is immaterial whether the LISD had other options available to afford Coggin due process after the Commissioner refused to appoint a hearing examiner. Although it is conceivable that the LISD could have held its own due process hearing[44] or sent a

---

[44] The majority opinion suggests that Texas law does not prohibit the LISD from holding its own hearing. Maj. Op. at 14. This conclusion is dubious. The Texas Supreme Court has held that a school district may not avoid the rules set forth in the Texas Education Code for terminating an employee. *Montgomery Indep. Sch. Dist.*

second notice of termination in an effort to extend the period of time in which Coggin could file a timely request for a hearing, any possible "inaction" by the LISD cannot fairly be termed a "cause" of the potential constitutional violation at issue here.

An "inaction" view of causation misstates the LISD's obligation to Coggin in this situation. Under the statutory setting of this case, Texas law deliberately separates the decision to terminate a public school teacher from the duty to afford a due process hearing, presumably as a means of protecting teachers from biased school board reviews.[45] The LISD had no authority to appoint a hearing examiner under this statutory scheme, nor did it have the authority to supplement Coggin's statutorily-governed hearing with its own factfinding hearing. *See Davis*, 34 S.W.3d at 568. Under Texas law, the LISD's role in providing Coggin procedural due process was complete when it

*v. Davis*, 34 S.W.3d 559, 568 (Tex. 2000) (concluding that "the Board did not have authority within the statutory scheme of subchapter F" to make additional findings beyond those made by the appointed hearing examiner); *see also* TEX. EDUC. CODE ANN. § 21.251 ("[Subchapter F] applies if a teacher requests a hearing after receiving notice of the proposed decision to: . . . (2) terminate the teacher's probationary or term contract before the end of the contract period . . . ."). Although *Davis* did not consider the due process aspects of the statutory scheme, it certainly illustrates the mandatory nature of the regime. The Education Code does not clearly authorize a school district to hold *any* type of hearing once the Commissioner declines to appoint a hearing examiner, and *Davis* at least suggests strongly that the LISD is forbidden from stepping beyond the narrow dictates of the scheme. *See also Reyes v. Roma Indep. Sch. Dist.*, No. 083-R2-199, at 4-6 (Tex. Comm'r Educ. Feb. 25, 2000) (stating that the procedures set out in Chapter 21 are mandatory and exclusive, that a board of trustees does not have jurisdiction to deviate from those procedures, and that the parties cannot agree to change those procedures unless the statute authorizes them to do so).

[45] The apparent purpose of this scheme is to ensure teachers a fair and independent review of the allegations against them when faced with termination prior to the expiration of their contracts. Under Texas law, Coggin could be terminated only for "good cause *as determined by the board*." *See* TEX. EDUC. CODE ANN. § 21.211(a)(1) (emphasis added). By providing for an independent pre-termination hearing, however, Texas law limits the circumstances in which a school board may find "good cause" for termination. Although the school board may reject the conclusions of law and proposed action recommended by the appointed hearing examiner in an employee's case, the school board may not reject the hearing examiner's findings of fact if they are supported by the substantial evidence in the record. *See* TEX. EDUC. CODE ANN. § 21.259.

provided him with constitutionally adequate notice of the charges against him and informed him of the procedures he needed to follow to request a pre-termination hearing from the Commissioner of the TEA. Once the LISD fulfilled this obligation, under Texas law, the duty to ensure that Coggin was afforded the hearing to which he was constitutionally entitled shifted to the Commissioner.[46] The majority opinion does not hold that this shift in obligations is unconstitutional. Indeed, it cannot, because no case holds that it is unconstitutional for Texas to "divide" due process in this way. *Cf. Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir. 1986) ("The states have virtually complete freedom to decide who will be responsible for [the tasks of modern government], and therewith to determine who will be held liable for civil rights violations that occur in the course of carrying them out."). Instead, the majority opinion chooses to ignore this issue, limiting its analysis to the tangential issue of whether the LISD is the "final arbiter of employment disputes."[47] Maj. Op. at 13.

---

[46]Normally, the party who causes the deprivation of property is the party responsible for affording due process. Indeed, had this case arisen before the Texas legislature amended the Texas Education Code in 1995, there would be no question that the LISD could be held liable under § 1983 for terminating Coggin without a hearing. In 1995, however, the Texas legislature dramatically altered the state's provisions for terminating teachers under contract, and thereby changed this result.

[47]The "final decision maker" analysis in the original panel opinion concluded with the argument that the LISD was required to conduct a "due process hearing to comply with its federal constitutional obligations," and that any obstacle created by Texas law would "have to yield to federal law under the Supremacy Clause." *Coggin*, 289 F.3d at 336.

In actuality, the Supremacy Clause is irrelevant. It might be tempting to reason that if *state procedures* prevented the LISD from remedying the "mistake of law" made by the Commissioner, then those procedures should yield to federal law. This argument, however, assumes that the LISD retained an obligation to ensure that Coggin receive all the process he was due prior to terminating his employment. As noted above, Texas law vests that obligation in the Commissioner of the TEA—not the school district. Moreover, there is no legal support for the proposition that LISD had a *federal* obligation to compensate for the Commissioner's alleged mistakes. *Cf. Bush*, 795 F.2d at 1209.

36

Thus, the only way that Coggin could succeed against the LISD in this case is if we invalidate Subchapter F's hearing provisions. But Coggin does not challenge the constitutionality of Texas's statutory scheme, either on its face or as applied in his case. On the contrary, he concedes that the procedures set forth in Subchapter F of the Texas Education Code are precisely the kind of "reasonable procedural requirements" for invoking due process rights previously sanctioned by the Supreme Court.[48] *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982). Because Coggin argues only that the LISD violated his procedural due process right by terminating him after *the Commissioner* wrongfully denied him a hearing, his claim fails for lack of causation.

II

The majority opinion has taken a different tack from that of the panel opinion. The majority opinion contends that the LISD was the "sole cause of the violation of Coggin's right to due process of law" because it discharged Coggin four business days after Coggin received notice of the Commissioner's refusal to appoint a hearing examiner. Maj. Op. at 8. The logic of this "timing" causation argument fails on its own terms, *see* Parts II.A and B *infra*, but the majority opinion's approach is suspect for at least two other reasons.

First, this new causation theory was never briefed or argued to either this court or the district court. In the panel opinion, the majority concluded that the LISD had violated Coggin's due process rights by firing him when it knew he had requested a hearing but had not received one. *Coggin*, 289 F.3d at 335-38. The majority opinion now contends, without any prompting by the parties, that the

---

[48]Coggin does argue, however, that the Commissioner improperly adopted a receipt rule instead of the more "traditional" mailbox rule, which has led to mischief at both the trial and appellate levels.

LISD's error was acting too quickly.  This latter theory was not in any of the briefs submitted to the district court, nor was it included in the district court's ruling.  It is inappropriate for the majority opinion to decide this case on grounds that were not presented.  *United States v. Brace*, 145 F.3d 247, 255-56 (5th Cir. 1998) (en banc) ("Restated, we review *only* those issues presented to us; we do not craft new issues or otherwise search for them in the record." (emphasis added)).

Second, the majority opinion states that the LISD's discharge of Coggin "prematurely cut off Coggin's right to appeal under § 7.057(d)."  Maj. Op. at 9.  Yet it cites no state law to support this argument.  In fact, the majority opinion's underlying premise that TEX. EDUC. CODE ANN. § 7.057(d) somehow incorporates TEX. GOV'T CODE ANN. § 2001.176 is pure speculation about Texas law.  Even if Coggin had a reasonable period of time to file an appeal, as the majority opinion contends (*see* Maj. Op. at 9 n.21), its further conclusion that Coggin did not have any appeal rights after the LISD terminated him is simply not supported by existing authorities.  *See, e.g.*, *Smithville Indep. Sch. Dist. v. Hoskins*, Nos. 03-98-00561-CV, 03-98-00624-CV, 1999 WL 716665 (Tex. App.—Austin Sept. 16, 1999, no pet.) (not designated for publication) (considering a teacher's § 7.057(d) appeal after he had been terminated by the school board and affirmatively deciding that the court had jurisdiction to consider the issues raised by the teacher, including various due process claims).

## A

The majority opinion reasons as follows: First, Coggin had a protected property interest in continued employment and was entitled to constitutional due process before his employment was terminated.  Second, Coggin attempted to invoke his right to due process by requesting a pre-termination hearing from the Commissioner.  Third, the Commissioner erroneously deprived Coggin of his right to a pre-termination hearing by ruling that Coggin's request was untimely.  Fourth, the

38

Commissioner's error could have been corrected by the Texas state courts, but the LISD cut off Coggin's appeals rights by firing him too quickly.[49] Thus, the LISD is the "true" reason that Coggin was not provided with the pre-termination hearing to which he was entitled.

Of course, the third step of the majority opinion's reasoning is the linchpin to its analysis. Although the nature of Coggin's employment created due process rights, such rights can be waived. The Supreme Court has held that a state may both create reasonable procedural requirements regarding the right to a hearing and terminate a claim for failure to meet these statutory requirements without raising due process concerns. *Logan*, 455 U.S. at 437. In other words, Coggin was not entitled to a pre-termination hearing unless he complied with the reasonable procedural requirements of Chapter 21 of the Texas Education Code.[50] And one of those requirements is that a "teacher *must* file a written request for a hearing . . . with the commissioner *not later* than the 15th day after the date the teacher receives written notice [of the proposed termination]." TEX. EDUC. CODE § 21.253 (emphasis added).

The Commissioner refused to appoint a hearing examiner because he determined that Coggin's request was late, and thus Coggin had waived his right to such a hearing. If the Commissioner was correct—that the mailbox rule does not apply under state law—then Coggin was

---

[49]The majority opinion's recitation of the facts also suggests that the LISD terminated Coggin in the face of a "'flurry of correspondence'" between Coggin's attorney that the Commissioner regarding the timeliness of Coggin's hearing request. Maj. Op. at 5. In fact, the record clearly indicates that the flurry did not even begin until eleven days after Coggin's termination. So, there is no reason to believe that the LISD knew or had reason to know that Coggin was challenging the Commissioner's determination.

[50]This fact is undisputed. Again, Coggin himself admits that the procedures set forth in Subchapter F of the Texas Education Code are precisely the kind of "reasonable procedural requirements" sanctioned by the Supreme Court in *Logan*.

not constitutionally entitled to a hearing or any other kind of process before the LISD terminated him. *See Logan*, 455 U.S. at 437. Accordingly, if Coggin waived his rights, then it is irrelevant whether the LISD fired him one day later, or one year later.

When phrased this way, it is clear that the majority's opinion rests on one fundamental premise: Section 21.253 of the Texas Education Code sets out a "mailbox rule" for hearing requests, and thus the Commissioner was *wrong* to apply a "receipt rule" to Coggin's request. The validity of Coggin's § 1983 suit depends on this premise. Coggin cannot establish that his due process rights were violated unless he can show that he did not waive those rights. Surprisingly, the majority opinion does not focus on the burden of proof in this case. But it is undisputable that Coggin bears the burden of showing that a constitutional violation occurred. *See Crawford-El v. Britton*, 523 U.S. 574, 588 (1998) (reiterating that the plaintiff bears the "initial burden of proving a constitutional violation"); *Lewis v. Woods*, 848 F.2d 649, 652 (5th Cir. 1988) ("It is axiomatic that a plaintiff who files suit under 42 U.S.C. § 1983 may recover only if he proves a constitutional violation . . . .").

The original panel opinion and the district court's ruling at least implicitly recognized this, and included an explicit discussion on the rule of § 21.253. *Coggin*, 289 F.3d at 330-32. Although the detailed reasoning of those opinions is not included in the majority's opinion,[51] the waiver issue must still be considered because it is the necessary platform for the majority opinion's current holding. A careful examination reveals that this platform is faulty.

---

[51] The majority does, however, implicitly recognize the importance of this point. *See* Maj. Op. at 9 ("Consequently, we conclude that Coggin did not waive his rights . . . ."), 10 ("In this case, . . . Coggin was deprived of his protected employment right without the due process hearing to which he was entitled and which he did not waive . . . .").

B

The majority opinion, like that of the original panel (and the district court), fails to recognize that § 21.253 of the Texas Education Code is ambiguous. Instead, all are content to believe that § 21.253 clearly applies a "mailbox rule" to hearing requests. However, § 21.253 does not say, on its face, that a filing is deemed timely if it was postmarked within the fifteen-day period. Likewise, § 21.253 does not explicitly state that hearing requests are governed by a receipt rule. Notwithstanding the majority opinion's assumptions to the contrary, § 21.253 is anything but clear.[52]

---

[52]This ambiguity can best be illustrated by examining the position taken by the district court. The district court first reasoned that "file" must not mean "receipt by the commissioner" because other provisions of the Texas Education Code explicitly use "receipt" language. Yet this argument is overly broad. Chapter 21 of the Texas Education Code uses "receive" to refer to a party's receipt of a document. Upon receipt, the party is given a certain amount of time to perform a designated action. In other words, the party is required to "file", "request","notify", *et cetera* within so many days after "receiving" some type of notice. *See, e.g.*, TEX. EDUC. CODE ANN. § 21.207 (after "*receiving* notice of the proposed nonrenewal," the teacher "shall *notify* the board of trustees . . . not later than the 15th day after the date the teacher *receives* the notice") (emphasis added); TEX. EDUC. CODE ANN. § 21.254(c) ("The commissioner shall *assign* a hearing examiner . . . not later than the 10th business day after the date on which the commissioner *receives* the request for a hearing.") (emphasis added). Viewed this way, it is clear that the Code's use of "receive" may be nothing more than a logical way to reference the start of a time period. This syntax does not, however, illuminate the meaning of "file" in § 21.253.

The district court also pointed out that the TEA's own administrative regulations incorporate a mailbox rule, *see* TEX. ADMIN. CODE ANN. § 157.1050(b), and took this as evidence of a general "view of the agency" that the mailbox rule governs hearings. But a general, catch-all provision in a different state code may not trump the detailed provisions set forth in chapter 21 of the Education Code. Evidence from within the same statutory scheme is more indicative of what the Texas legislature intended. *See, e.g., Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 901 (Tex. 2000) (holding that "the more specific statute controls over the more general"); *Rudman v. R.R. Comm'n of Tex.*, 349 S.W.2d 717,

In fact, Coggin himself knew of § 21.253's ambiguity. He admits that he checked with the post office to see if his request, sent by certified mail, with return receipt requested, would arrive by the deadline. So Coggin, by his own admission, was not relying on a mailbox rule.[53]

In the face of this obvious ambiguity, the Commissioner could have reasonably interpreted the statutory language to include either a mailbox rule or a receipt rule. The Commissioner chose the latter. And, had the Commissioner's interpretation been challenged in a Texas court, it would have been given "serious consideration, so long as the construction [was] reasonable and [did] not contradict the plain language of the statute." *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994) (quoting *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993)). The district court, however,

---

(Tex. 1961) ("Courts must take statutes as they find them."); *Gov't Pers. Mut. Life Ins. Co. v. Wear*, 251 S.W.2d 525, 529 (Tex. 1952) (holding that duty of courts is to construe a statute from the language used therein if possible). And a careful examination of chapter 21 reveals that the legislature deliberately included a mailbox rule in other sections. *See* TEX. EDUC. CODE ANN. §§ 21.105(a), .160, .210. Section 21.253 includes no such language, and this fact weighs against a mailbox rule.

Finally, the district court relied on *Ward v. Charter Oak Fire Ins. Co.*, 579 S.W.2d 909 (Tex. 1979). While the similarities between *Ward* and this case are striking, its importance is probably exaggerated. Decided almost twenty-five years ago, *Ward* involved the worker's compensation law, which the Texas Supreme Court held was "to be liberally construed to effectuate the remedies it grants." *Id.* at 910. Liberal construction of the Worker's Compensation Law was an established policy even before *Ward*, but no legal authority indicates that Texas liberally construes the statutory scheme at issue here.

[53]If § 21.253 did clearly incorporate a mailbox rule, Coggin would have a much stronger constitutional claim. In that case, he could argue that it would be arbitrary, and therefore unconstitutional, for the Commissioner to deny Coggin's request for a hearing as untimely. *Cf. Logan*, 455 U.S. at 431-34 (finding a due process claim when the plaintiff was denied a hearing after complying with every state law procedural requirement). This is not, however, the situation before us.

erred by not according the Commissioner this deference.  It failed to even consider the constitutionality of the receipt rule applied by the Commissioner.

This failure was a serious analytical error.  In its haste to determine whether a constitutional violation had occurred, the district court did not stop to consider whether the receipt rule had afforded Coggin due process.  Without a constitutional violation, Coggin does not have a claim under § 1983.  Thus, the pertinent query for the district court was whether the Commissioner's reasonable application of a receipt rule provided Coggin with the necessary process.  I agree with the majority opinion (and the district court) that a fifteen-day mailbox rule satisfies due process.  Importantly, however, a fifteen-day receipt rule is equally constitutional.

The constitutional minima of procedural due process are notice and a *meaningful opportunity* to respond.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976).  Against this constitutional background, it is clear that a fifteen-day receipt rule is as reasonable a procedural requirement as a fifteen-day mailbox rule; both provide a meaningful opportunity for a hearing.  In fact, other courts have found significantly shorter time periods constitutional.  *See Lindsey v. Normet*, 405 U.S. 56, 64-65 (1972) (finding an eviction procedure with a two to six day early-trial provision constitutional); *Panozzo v. Rhoads*, 905 F.2d 135, 139 (7th Cir. 1990) (affirming a district court's ruling that notice of a pre-termination hearing less than a day in advance is sufficient for due process purposes); *see also Giberson v. Quinn*, 445 A.2d 1007, 1009-10 (Me. 1982) (considering a ten-day time limit with a receipt rule for filing a request for a hearing following the suspension of a driver's license).

The simple fact is that the district court did not need to determine state law to evaluate Coggin's § 1983 suit: the Commissioner's application of a receipt rule did not violate Coggin's due

43

process rights.[54]  Since the Commissioner applied a reasonable construction of a facially ambiguous statute, Coggin cannot seriously argue that his denial of a hearing was arbitrary.  *Cf. Neal v. Puckett*, 286 F.3d 230, 249 (5th Cir. 2002) (en banc) (Jolly, J., concurring) (defining "arbitrary" to mean "determined by individual discretion"), *cert. denied*, 123 S.Ct. 963 (2003); *Reid v. Rolling Fork Pub. Util. Dist.*, 979 F.2d 1084, 1088 (5th Cir. 1992) (holding that "arbitrary" means *unreasonable* action or discrimination (emphasis added)).  Thus, the opportunity afforded Coggin could only fail to be meaningful if it fell short of the constitutional minima—but it is the United States Constitution that determines the process Coggin was due, not the filing rule of § 21.253 of the Texas Education Code.  And, as explained above, the rule applied by the Commissioner more than suffices when measured by a federal constitutional yardstick.[55]

The district court's unnecessary foray into state law obscures the plain fact that Coggin failed to demonstrate a constitutional violation.[56]  For the reasons given above, Coggin cannot prove that

---

[54]Even if the Texas courts someday decide that § 21.253 incorporates a mailbox rule, the Commissioner's failure to afford Coggin that extra increment of procedural protection would not automatically become unconstitutional.  At the time Coggin was denied a hearing, the Commissioner's reasonable interpretation and application of § 21.253 was enough to accord Coggin due process. *Loudermill*, 470 U.S. at 546; *Lindsey*, 405 U.S. at 64-65.

[55] To be clear, because the receipt rule is constitutionally adequate, this court should not attempt to resolve the meaning of the term "file" in § 21.253.  Likewise, the district court should have left this issue, a matter of state law, for Texas to decide.

[56]And the majority opinion seems to build on this error.  It skims over this issue by insisting that the LISD "does not challenge or point to any error in the district court's determination that Coggin timely filed his request for a hearing." Maj. Op. at 7.  This is simply not true.  The LISD argued, before both the original panel and the *en banc* court, that Coggin was provided with the process he was due under the Fourteenth Amendment and, likewise, that the district court erred in its analysis of

44

the Commissioner's reasonable application of a receipt rule to his hearing request wrongly denied him

a hearing. Accordingly, Coggin cannot show that he was unfairly denied a hearing; he cannot show

that he did not waive his rights; and, therefore, he cannot prove that the LISD violated his due

process rights by firing him immediately.[57]

The majority opinion attempts to shore up this faulty analysis by attaching various labels to

the LISD, such as "responsible state actor," "final policy and decision maker," and "final arbiter of

employment disputes." Maj. Op. at 12, 13, 14. These terms are reminiscent of the analysis in the

original panel opinion. Again, the panel majority concluded that the LISD violated Coggin's due

process rights because its "intentional discharge of Coggin in spite of its knowledge that he had not

had any kind of hearing necessarily was the moving force behind Mr. Coggin's deprivation and

what process Coggin was due. *See, e.g.*, Appellant's Br. at 18, 24; Appellant's Supplemental En Banc Br. at 15-16. The LISD also argues that this error, in turn, led the district court to "improperly . . . reach and resolve other unnecessary questions." Appellant's Br. at 24.

The LISD may not explicitly challenge the district court's holding that § 21.253 incorporates a mailbox rule, but it clearly argued that the district court did not need to decide this issue because the rule of *Logan* applied. *See id.* at 18. Because we review the district court's legal determinations *de novo*, the LISD's arguments are more than sufficient to preserve the issue of whether it was legally necessary, under federal constitutional law, for the district court to interpret § 21.253.

[57]Coggin's ultimate failure to demonstrate a constitutional violation by the LISD distinguishes this case from *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). In *Loudermill*, the terminated school district employees had made the necessary showing that their rights were violated when they were fired without a pre-termination hearing. *Id.* at 548. Unlike Coggin, the *Loudermill* employees were given no opportunity to request a pre-termination hearing. *Id.* at 536-37. Thus, the issue of whether the employees had waived their rights was inapplicable.

injury." *Coggin*, 289 F.3d at 336. But this line of reasoning is also faulty for the reasons given above. See Part I *supra*.

Assuming, *arguendo*, that Coggin could somehow prove that § 21.253 clearly incorporated a mailbox rule and thus he did not waive his right to a hearing, he still cannot succeed in this suit. No matter what process Coggin was owed, he has failed to establish that the LISD caused the deprivation of his rights. Without the necessary causal link between Coggin's supposed due process violation and the actions and/or duties of the LISD, Coggin cannot maintain a valid § 1983 claim against this defendant.

### III

Failure to use proper constitutional analysis has led to the majority's conclusion that the LISD violated Coggin's procedural due process rights. They choose to grant relief when, for a multitude of reasons, Coggin has not proven a viable § 1983 claim. Even if the circumstances of Coggin's termination seem unjust, we should avoid acting as *cognoscenti* of what is right and wrong, less we effectively relegate the Constitution and state law to mere *bien pensant*.

For the above reasons, I would vacat e the decision of the district court and render for the LISD.